UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ALEXANDER RODRIGUEZ,<br><br>                    Plaintiff,<br>        vs.<br><br>UNICITY INTERNATIONAL, INC.,<br><br>                    Defendant. | Case No.: 2:25-cv-000754-GMN-NJK<br><br>**ORDER GRANTING, IN PART, MOTION TO DISMISS** |

Pending before the Court is the Motion to Dismiss, (ECF No. 22), filed by Defendant Unicity International, Inc. Plaintiff Alexander Rodriguez filed a Response, (ECF No. 30), to which Defendant replied, (ECF No. 33).

For the reasons discussed below, the Court GRANTS, in part, and DENIES, in part, Defendant's Motion to Dismiss.

I.   **BACKGROUND**

This action arises from a series of workplace disputes between Plaintiff and his former employer, Defendant Unicity, that ultimately resulted in Plaintiff's termination. (*See generally* First Amend. Compl. ("FAC"), ECF No. 16). Plaintiff was employed by Defendant from May 2024 until he was terminated in August 2024. (*Id.* ¶¶ 6, 17). The first dispute arose in August 2024, when Plaintiff observed a coworker ("Martin") throwing boxes at an African American employee and using the n-word. (*Id.* ¶ 8). Plaintiff subsequently filed a complaint. (*Id.*). Upon receiving Plaintiff's complaint, his supervisor admitted Martin had a history of making racist remarks in the workplace and moved Plaintiff and the African American employee to the other side of the facility. (*Id.* ¶ 9). Plaintiff also complained to HR and another supervisor at Unicity about Martin's racist remarks and Defendant's failure to address the problem, but did not receive a response. (*Id.* ¶ 10).

Around August 8, 2024, a Unicity supervisor emailed Plaintiff stating she was "sorry for the situation you are in." (*Id.* ¶ 13). Plaintiff notified Unicity's HR directors about Martin's continued efforts to treat employees of color badly, threaten the jobs of employees of color, and that he was being retaliated against for his complaints. (*Id.*). Plaintiff also notified Unicity's HR directors that he had ongoing anxiety, but neither director engaged in the process of reporting his disability, nor attempted to accommodate his disability. (*Id.* ¶ 14). Later that same day, Plaintiff suffered an anxiety attack and took leave for the day. (*Id.* ¶ 15). The next day, an HR representative emailed Plaintiff promising to investigate Martin's conduct and the incidents Plaintiff addressed in his complaints. (*Id.* ¶ 16). A few days later, Plaintiff was terminated. (*Id.* ¶ 17). Plaintiff alleges that Defendant terminated his employment in retaliation for his protected activity and in discrimination of his disability. (*Id.*).

Plaintiff brings the instant action alleging claims for negligent supervision and retention, discrimination under Nevada Revised Statute ("NRS") 613.330, discrimination under 42 U.S.C. § 12112, retaliation under NRS 613.340, retaliation under 42 U.S.C. § 1981, retaliation under 42 U.S.C. § 12203, and failure to provide reasonable accommodation. (*See generally id.*).

## II.   LEGAL STANDARD

Dismissal is appropriate under FRCP 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, FRCP 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant. . . undue prejudice to the opposing party by virtue of. . . the amendment, [or] futility of the amendment. . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

### III. DISCUSSION

Defendant moves to dismiss all of Plaintiff's claims for failure to state a claim. The Court takes up each of Plaintiff's claims in turn.

#### A. Negligent Supervision and Retention

Defendant moves to dismiss Plaintiff's negligent supervision and retention claim on the grounds that he relies solely on alleged discriminatory conduct, rather than on an intentional wrongful act, and that he fails to allege injury. (Mot. Dismiss 6:1–3, ECF No. 22). Defendant also moves to dismiss this claim arguing that Plaintiff is precluded from bringing this claim by available statutory remedies. (*Id.* 6:17–19).

The Court first addresses Defendant's preclusion argument, before turning to the merits of Plaintiff's claim. Defendant argues that Plaintiff's common-law negligent supervision and retention claim is precluded by the comprehensive statutory remedies provided under NRS 613.330, the ADA, and Title VII. (*Id.*). Defendant contends that Nevada law generally does not allow a plaintiff to pursue a tort claim based on discriminatory conduct when statutory frameworks already provide exclusive remedies for such conduct. (*Id.* 6:19–20). Defendant

maintains that permitting both would undermine the statutory limitations on damages and circumvent the legislature's intent for a uniform remedial scheme. (Reply 4:13–15, ECF No. 33). The Court is unpersuaded, however, because Defendant does not show that Nevada Supreme Court authority extends statutory preclusion to all negligence-based torts whenever discrimination is alleged. The Court notes that while tortious discharge actions have been preempted by statutory remedies, Nevada precedent does not uniformly bar all tort claims that overlap with statutory rights. *Dillard Dept. Stores, Inc. v. Beckwith*, 989 P.2d 882, 885 (Nev. 2000). Recent cases expressly distinguish negligent supervision from tortious discharge, finding that the existence of statutory remedies does not automatically preclude a common law claim unless the legislature clearly intended such exclusivity or where the tort claim merely restates the statutory violation. *See Freeman Expositions, LLC v. Eighth Judicial Dist. Ct.*, 520 P.3d 803, 810 (Nev. 2022). Thus, the Court finds insufficient grounds to hold the negligent supervision and retention claim preempted at the pleading stage, especially where Plaintiff's allegations may involve facts beyond those directly addressed by the statutory remedies.

Now turning to the merits, to state a claim for negligent training and supervision in Nevada, Plaintiff must show "(1) defendant owed a duty of care to the plaintiff; (2) defendant breached that duty by hiring, retaining and/or supervising an employee even though defendant knew, or should have known, of the employee's dangerous propensities; (3) the breach was the cause of plaintiff's injuries; and (4) damages." *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996). "Nevada law does not permit the inference that an employer was negligent in training or supervising simply because [its] employees acted in a discriminatory manner." *Reece v. Republic Servs., Inc.*, No. 2:10-cv-00114-GMN-RJJ, 2011 WL 868386, at *11 (D. Nev. Mar. 10, 2011). The Supreme Court of Nevada has recognized that negligent supervision and retention claims do not necessarily depend on the employee's actions being intentional; rather, such claims focus on whether the employer knew of the employee's conduct and failed to take

appropriate action. *ETT, Inc. v. Delegado*, No. 46901, 2010 WL 3246334, at *7 (Nev. 2010). Thus, Plaintiff must allege facts specifically indicating how the employer violated this duty. *Borenstein v. Animal Found.*, No. 2:19-cv-00985-CDS-NJK, 2025 WL 1368865, at *8 (D. Nev. May 9, 2025).

Here, Plaintiff alleges that Defendant employed him and had a duty to use reasonable care in supervising and retaining Martin, which is sufficient to establish prong one at this stage. (FAC ¶¶ 28–29). Plaintiff satisfies prong two by alleging that Defendant breached this duty through negligent supervision of Martin, and knowledge of Martin's unfitness by failing to investigate reports of Martin's misconduct, among other specific examples. (*See id.* ¶ 29). Defendant's argument that Plaintiff's negligent supervision claim should be dismissed because it relies on alleged discriminatory conduct rather than some intentional wrongful act is unpersuasive because Plaintiff's factual allegations of Defendant's knowledge and failure to act are sufficient to satisfy the second prong at the pleading stage. Plaintiff next states that Defendant's breach was the direct and proximate cause of his injuries including lost earnings, salary, job benefits, and emotional distress satisfying prongs three and four at this motion to dismiss stage. (*Id.* ¶ 30). Viewing the allegations in the light most favorable to Plaintiff, he has plausibly alleged a negligent supervision and retention claim. Accordingly, the Court DENIES the Motion to Dismiss this claim.

### B. Disability Discrimination Claims

Defendant argues that Plaintiff's discrimination claims under NRS 613.330 and 42 U.S.C. § 12112 fail because Plaintiff does not allege the bare elements for a *prima facie* claim. (Mot. Dismiss 8:15–16). Under the Americans with Disabilities Act ("ADA"), an employer may not discriminate "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112. To establish a discrimination claim under the ADA, a plaintiff must establish that: (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual

with a disability; and (3) he suffered an adverse employment action because of his disability. *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018). "Nevada courts apply the ADA approach to Plaintiff's state law claims." *Campos v. Town of Pahrump*, No. 2:13-cv-00218-RFB-GWF, 2017 WL 3484183, at *1114 (D. Nev. Aug. 11, 2017). Therefore, the Court will address the federal and state law disability discrimination claims together.

### 1. Allegations of Disability

Defendant argues Plaintiff's disability discrimination claims fail because he has not adequately alleged that he is disabled. (Mot. Dismiss 8:15–18). Under the ADA, a "disability" is defined as (1) "a physical or mental impairment that substantially limits one or more major life activities," (2) "a record of such an impairment," or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A). An individual meets the definition by satisfying any one of these three provisions. As for the first provision, major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Courts consider the nature, severity, duration, and long-term impact of the impairment when determining if an individual is substantially limited. 29 CFR § 1630.2(j)(2). Short-term or non-chronic impairments, such as broken limbs or concussions, typically do not qualify. 29 CFR § 1630.2(j).

Plaintiff's FAC alleges that he "has a disability or disabilities or is regarded as having a disability." (FAC ¶ 35). Plaintiff further alleges that his anxiety substantially limits his ability to work and interacting with others. (FAC ¶¶ 14–15). In his Response, he clarifies that he suffers from anxiety, which he maintains limits his major life activity of working. (Resp. 11:26, ECF No. 30). The Ninth Circuit has recognized that anxiety disorders can constitute an impairment under the ADA. *McAlindin v. County of San Diego*, 192 F.3d 1226, 1233 (9th Cir. 1999). Anxiety, unlike temporary conditions, is generally considered a persistent and ongoing

impairment. Plaintiff also pleads that he informed two of Defendant's HR representatives about his ongoing anxiety and subsequent anxiety attack due to the hostile work environment in which Martin and Defendant created, which prevented him from working for the rest of the day and required him to take leave, satisfying the requirement that his disability limits a major life activity. (*See* FAC ¶ 15); (Resp. 12:18–20). Taking these allegations as true, Plaintiff has plausibly pled that he is disabled under the ADA.

### 2. Qualified Individual with a Disability

Under the ADA, a "qualified individual with a disability" is defined as "individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Defendant contends that Plaintiff does not allege he is a qualified individual with a disability because he does not adequately plead that he was capable of performing the essential functions of his position as an in-person shipping and receiving warehouse worker, with or without reasonable accommodation. (Mot. Dismiss 8:16–18); (Reply 7:27–28). But in his FAC, Plaintiff alleges that he was qualified to perform the essential functions of his job, as a Warehouse Clerk for Defendant, with or without reasonable accommodation. (FAC ¶¶ 6, 46). And in his Response, Plaintiff explains that his position required him to assist with shipping customer orders, and that he performed these duties without any accommodation. (Resp. 14:8–11). Viewing the allegations in the light most favorable to Plaintiff, he has plausibly alleged that he was qualified to perform the essential functions of his position.

### 3. Adverse Employment Action Because of the Disability

Defendant argues that Plaintiff has not plausibly alleged a *prima facie* case of discrimination or shown that his purported disability was a motivating factor in his termination. (Mot. Dismiss 9:23–27); (Reply 8:3–4). Plaintiff alleges that on August 8, 2024, he informed two of Defendant's HR representatives that he suffered from ongoing anxiety and experienced

an anxiety attack later that day. (FAC ¶¶ 14–15).  Four days later, Defendant terminated his employment. (*Id.* ¶ 17).  Plaintiff argues that the close timing between the disclosure of his disability, request for accommodation, and subsequent termination constitutes specific and substantial evidence of discriminatory motive. (Resp. 15:2–11).  Indeed, proximity in time between Defendant's knowledge of Plaintiff's disability and adverse action is strong circumstantial evidence that the adverse action was because of the disability. *See, e.g., Bradshaw v. Wal-Mart Assocs., Inc.*, No. 23-CV-593 TWR (BLM), 2025 WL 51469, at *11 (S.D. Cal. Jan. 8, 2025).  Accordingly, the Court finds that Plaintiff has plausibly alleged a causal connection between his report of anxiety and termination.  But the Court disagrees that Plaintiff has plausibly pled that he requested an accommodation, which the Court addresses in more detail below.

In sum, Plaintiff has stated a *prima facie* claim for disability discrimination under the ADA and Nevada law.  The Court therefore DENIES Defendant's Motion to Dismiss Plaintiff's disability discrimination claims.

**C. Retaliation Claims**

Plaintiff alleges that Defendant retaliated against him after he (1) identified his disability to HR in violation of the ADA and Nevada law and (2) reported Martin's racist behavior to HR and his supervisor in violation of Title VII and § 1981.  To state a *prima facie* claim of retaliation under the ADA, Nevada law, Title VII, and 42 U.S.C. § 1981, a plaintiff must allege that: (1) he engaged in a protected activity, (2) the employer subjected him to an adverse employment action, and (3) "a causal link exists between the protected activity and the adverse action." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003) (Title VII and 42 U.S.C. § 1981); *Pope v. Motel 6*, 114 P.3d 277, 281 (Nev. 2005) (NRS 613.340); *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849 (9th Cir. 2004) (ADA).

### 1. Protected Activity

#### a. Under the ADA and Nevada Law

Defendant argues Plaintiff's disability retaliation claims under NRS 613.340 and 42 U.S.C. § 12203 are not plausibly pled because he neither opposed any unlawful practice nor requested a reasonable accommodation. (Mot. Dismiss 10:17, 11:7–10). Plaintiff, however, contends that he engaged in protected activity when he informed Defendant's HR representatives of his disability and need for an accommodation. (Resp. 16:15–16). A request for accommodation qualifies as protected activity if it is sufficiently direct and specific to notify the employer that the employee requires assistance due to a disability. *Hayes v. Wal-Mart Stores, Inc.*, No. 09-47-HA, 2011 WL 669102, at *1090 (D. Or. Feb. 17, 2011). The request need not be in writing, use specific language, or be made personally by the employee, so long as it clearly communicates the need for an adjustment or change related to a medical condition. *See, e.g.*, *Hoang v. Wells Fargo Bank, N.A.*, No. 09-819-KI, 2010 WL 2640057, at *1101 (D. Or. June 29, 2010); *Trammell v. Raytheon Missile Sys.*, No. CV 08-338 TUC DCB, 2010 WL 2595133 (D. Ariz. June 24, 2010). Nevertheless, the initial burden rests with the employee or their healthcare provider to identify the disability, describe its limitations, and suggest reasonable accommodations. *Maes v. Henderson*, No. CV-N-97-00597-ECR(RAM), 1999 WL 41097, at *1290 (D. Nev. Jan. 29, 1999).

Taking the allegations in the light most favorable to Plaintiff, the Court finds that his notification to HR on or about August 8, 2024, informing HR representatives that he experienced ongoing anxiety, does not amount to a direct or specific request for accommodation because Plaintiff fails to allege that he requested an accommodation. (FAC ¶ 14 ("Mr. Rodriguez also notified Amber and Allyson that he had ongoing anxiety, but neither engaged in the interactive process or attempted to accommodate his disability.")). Thus,

Plaintiff's disclosure of ongoing anxiety to HR, without a specific request for accommodation or adjustment, does not constitute a protected activity under the ADA or NRS 613.340.

### b. Under Title VII and § 1981

Title VII prohibits retaliation against an employee who engages in protected activity, including opposing practices made unlawful by the statute or participating in investigations, proceedings, or hearings under it. 42 USC § 2000e-3. The opposition clause of § 2000e-3(a) safeguards employees who oppose conduct they reasonably believe to be discriminatory, even if that conduct turns out not to violate Title VII, provided the belief is objectively reasonable. *Panelli v. First American Title Ins. Co.*, No. 3:08-CV-0295-RAM, 2010 WL 1323568, at *1026 (D. Nev. Mar. 30, 2010). Opposition need not be formal and can include internal complaints or informal expressions of concern about perceived discrimination. *Andreatta v. Eldorado Resorts Corp.*, No. 2:15-CV-00749-RFB-NJK, 2016 WL 5867413, at *956 (D. Nev. Oct. 5, 2016). Courts have consistently held that employees who report discrimination against others are also protected under Title VII's opposition clause. *Kennedy v. UMC University Medical Center*, No. 2:14-CV-01678-RFB-PAL, 2016 WL 4497062, at *1109 (D. Nev. Aug. 25, 2016); *Wilson v. City of Fresno*, No. 1:19-CV-01658-KES-BAM, 2025 WL 254449, at *1104 (E.D. Cal. Jan. 21, 2025). Moreover, retaliation claims cognizable under § 1981 include claims by an individual, regardless of race, who suffers retaliation because he has tried to help a different individual, suffering direct racial discrimination. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 452 (2008).

Plaintiff alleges that he engaged in protected activity under Title VII and § 1981 when he reported and opposed instances of race discrimination in the workplace. (FAC ¶¶ 66, 77, 87). Indeed, Plaintiff first alleges that on or about August 1, 2024, he reported to his supervisor that a coworker, Martin, had thrown boxes at and used racial slurs toward an African American employee. (FAC ¶ 8). His supervisor allegedly acknowledged that Martin had "a history of

racist remarks" and subsequently relocated Plaintiff and the coworker to another area of the facility. (*Id.* ¶ 9). Plaintiff further states that he reported the incident to HR and a supervisor the same day. (*Id.* ¶ 10). Second, on August 7, 2024, Plaintiff observed an African American employee crying after an encounter with Martin and reported the incident to HR the following day, stating that Martin routinely mistreated and threatened employees of color. (*Id.* ¶¶ 12, 13). Defendant argues that Plaintiff's complaints of racial harassment directed at others do not constitute protected activity, (Mot. Dismiss 10:23–25), but Defendant is incorrect, see *Panelli*, No. 3:08-CV-0295-RAM, 2010 WL 1323568, at *1026; *Andreatta*, No. 2:15-CV-00749-RFB-NJK, 2016 WL 5867413, at *956; *Kennedy*, No. 2:14-CV-01678-RFB-PAL, 2016 WL 4497062, at *1109; *Wilson*, No. 1:19-CV-01658-KES-BAM, 2025 WL 254449, at *1104; *CBOCS W., Inc.*, 553 U.S. at 452.

Considering the reports Plaintiff made to supervisors and HR representatives, the Court finds that his complaints reporting racially discriminatory conduct in the workplace constitute protected activity under Title VII and 42 U.S.C. § 1981.

### 2. Adverse Employment Action

Under the ADA, Nevada law, Title VII, and 42 U.S.C. § 1981, an adverse employment action is any action "reasonably likely to deter employees from engaging in protected activity." *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004); *see also Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1021 (9th Cir. 2018). Under this standard, Plaintiff's allegations that he suffered adverse employment actions when he was moved to another location in the warehouse after he complained and was terminated shortly thereafter, (*see* FAC ¶¶ 9, 17), satisfy this element under the ADA, Nevada law, Title VII, and 42 U.S.C. § 1981.

### 3. Causation

#### a. Under the ADA and Nevada Law

To state a retaliation claim under the ADA and Nevada law, a plaintiff must establish that a causal link exists between the protected activity and the adverse action. *Pardi*, 389 F.3d at 849. Because the Court finds that Plaintiff has not adequately pled that he engaged in a protected activity under the ADA and Nevada law, he also cannot satisfy this element. Accordingly, the Court DISMISSES Plaintiff's claim for retaliation in violation of the ADA and NRS 613.340. However, the Court grants Plaintiff leave to amend to cure any deficiencies.

#### b. Under Title VII and 42 U.S.C. § 1981

The causal link under Title VII and § 1891 "can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011). Here, a reasonable fact finder could infer causation based on the temporal proximity between Plaintiff's protected activity and his termination. As alleged, Plaintiff complained to his supervisor on August 1, 2024, that a coworker, Martin, used racial slurs toward an African American employee, and his supervisor acknowledged that Martin "had a history of racist remarks in the workplace." (FAC ¶ 9). He further alleges that on August 8, 2024, an HR director emailed him stating she was "sorry for the situation you are in," and that same day, he notified both HR directors that Martin's racist behavior was ongoing and that he believed he was being retaliated against for complaining. (*Id.* ¶ 13). Plaintiff's employment was terminated eleven days after his initial complaint to HR. Given the short time frame between Plaintiff's complaints and his termination, and the specificity of his allegations that Defendant was aware of his protected activity, the Court finds that Plaintiff has plausibly alleged causation at the pleading stage. *See, e.g.*, *Bagley v. Bel-Aire Mech. Inc.*, 647 F. App'x 797, 800 (9th Cir. 2016) (finding a "36-day gap between the protected activity and the adverse

employment action" established causation). Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiff's retaliation claims under Title VII and 42 U.S.C. § 1981.

### D. Failure to Accommodate

To state a claim for failure to accommodate under the ADA, a plaintiff must allege that they requested a reasonable accommodation for disability. 42 U.S.C. § 12112(b)(5). As discussed above, Plaintiff's FAC does not plausibly allege that he made such a request. Accordingly, the Court DISMISSES Plaintiff's failure to accommodate claim, but grants Plaintiff leave to amend to cure any deficiencies that he may be able to remedy.

In sum, Defendant's Motion to Dismiss is GRANTED, in part, and DENIED, in part. Plaintiff shall be given leave to amend so he can attempt to cure the deficiencies identified in this Order.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 22), is **GRANTED, in part, and DENIED, in part**. The Motion is granted with respect to Plaintiff's claims for retaliation under the ADA and NRS 613.340 and failure to accommodate. The Motion is denied as to Plaintiff's other claims.

**IT IS FURTHER ORDERED** that Plaintiff shall have 21 days from the date of this Order to file an amended complaint.

**DATED** this __9__ day of December, 2025.

_____
Gloria M. Navarro, District Judge
United States District Court